UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINCOLN BENEFIT LIFE COMPANY,

        Plaintiff/Stakeholder,

v.                              Case No. 16-cv-911-pp

EILEEN MARIE GRENFELL and
ROBERT PREUSSLER,

        Defendants/Claimants.

**ORDER GRANTING MOTION TO DISMISS DEFENDANT PREUSSLER'S AMENDED CROSS-CLAIM (DKT. NO. 31)**

After dismissing his previous cross-claim for failing to state a claim, the court allowed defendant Robert Preussler to file an amended cross-claim. Dkt. No. 28. He did so, dkt. no. 29, and defendant Eileen Grenfell filed a motion to dismiss that amended cross-claim, dkt. no. 31. The court deeply regrets that due to its heavy calendar, it has taken an inexcusably long time to address that motion; this order resolves it, and hopefully will get the case back on track.

**I.    BACKGROUND**

On July 13, 2016, plaintiff Lincoln Benefit Life Company filed a complaint for interpleader relief against Eileen Marie Grenfell and Robert Preussler. Dkt. No. 1. Grenfell filed an answer and cross-claim against Preussler on September 13, 2016, dkt. no. 7, and Preussler filed an answer and cross-claim against Grenfell on October 14, 2016. Dkt. No. 10. Once both claimants had answered, the plaintiff filed a motion for leave to deposit funds

1

and to be dismissed. Dkt. No. 11. On February 9, 2017 the court granted the motion and dismissed the plaintiff. Dkt. No. 14.

On March 6, 2017, Grenfell filed a motion for judgment on the pleadings. Dkt. No. 15. After the twenty-one-day response period had lapsed, Preussler filed a letter request for extension of time to respond to the motion. Dkt. No. 17. He reiterated this request in an April 20, 2017 Civil L.R. 7(h) motion for leave to file paper and extension of time. Dkt. No. 20.

The court set a hearing for May 24, 2017. Before that hearing could take place, Preussler filed another Civil L.R. 7(h) motion, this time seeking leave to file an amended cross-claim. Dkt. No. 23. The court addressed the pending motions at the May 24, 2017 hearing. Dkt. No. 28. It denied Grenfell's motion for judgment on the pleadings and granted Preussler's motion to file an amended cross-claim. Id. The court agreed with Grenfell that Preussler's original cross-claim did not state a claim, but allowed him to file an amended cross-claim by June 7, 2017. Id. On the day of the deadline, Preussler filed an amended crossclaim and sixteen exhibits. Dkt. No. 29. Two weeks later, Grenfell filed a motion to dismiss the amended cross-claim, asserting that Preussler did not adequately allege forgery and undue influence. Dkt. No. 32 at 4-8.

## II. MOTION TO DISMISS AMENDED CROSS-CLAIM (Dkt. No. 31)

### A. Allegations of Preussler's Amended Cross-Claim

The amended cross-claim alleged that on March 1, 2001, Harry C. Kaufmann (Kaufmann) applied for term life insurance coverage on his life in

2

the amount of $150,000. Dkt. No. 29 at ¶6. It alleged that the plaintiff issued a policy in that amount on April 12, 2001. Id. It asserted that Kaufmann's March 1, 2001 application designated Eileen Kaufmann—his wife at the time, now known as Eileen Grenfell—as the primary beneficiary of the policy. Id. at ¶7. Preussler asserted that on March 1, 2001, Kaufmann submitted a Change of Beneficiary (CBF) form. Id. at ¶8. Allegedly, the CBF form listed Robert Preussler as the primary beneficiary and named Preussler's wife as a contingent beneficiary. Id. at ¶8.

The amended cross-claim explained that Preussler worked for Kaufmann in the automotive business. Id. at ¶9. It stated that prior to applying for the life insurance policy, Kaufmann had approached Preussler about a life insurance policy so that Preussler would have "seed money" to go into business for himself in the event of Kaufmann's death. Id. at ¶10. The amended cross-claim said that proposition did not surprise Preussler because Kaufmann already had applied for a similar life insurance policy with a different employee as beneficiary. Id. ¶11. Preussler alleged that he agreed to become the beneficiary and agreed to make all premium payments. Id. at ¶12. He asserted that he made all the premium payments on the policy from 2001 through Kaufmann's death. Id. at ¶13.

The amended cross-claim alleged that Preussler observed Kaufmann's memory and recall ability declining from 2014 through early 2016. Id. at ¶15. Preussler stated that in late January 2016, Kaufmann was diagnosed with brain cancer. Id. at ¶ 17. Preussler alleged that in early February 2016,

3

Kaufmann underwent exploratory brain surgery and nearly died; afterward, "Kaufmann was no longer expected to live very long, and was sent home on Hospice care." Id. at ¶¶21-22. Preussler alleged his belief that after this surgery, Kaufmann was no longer capable of fully understanding or making decisions about his finances. Id. at ¶27. Preussler alleged that from the time Kaufmann was sent home form the hospital until his death on March 27, 2016, his son—Kurt Kaufmann (Kurt)—"handled Kaufmann's remaining business concerns and had an opportunity to influence Kaufmann."[1] Id. at ¶38.

The amended cross-claim stated that Kaufmann and Grenfell were divorced as of May 4, 2015, but that the divorce case continued until at least February 1, 2016 (the date on which Grenfell filed a motion for contempt in the divorce action). Id. at ¶¶29-30. Preussler stated that the divorce was contentious from the date filed through at least February 1, 2016. Id. at ¶31. He also asserted that he was not aware of Kurt visiting Kaufmann with regularity; "the two seemed to be estranged since Kaufmann's divorce." Id. at ¶32. Preussler alleged that during Kaufmann's life and after his divorce from Grenfell, "Kaufmann was not particularly close to the children he had with Grenfell." Id. at ¶33. He also said that Kaufmann began living with a woman—"his girlfriend"—after his divorce. Id. at ¶34.

---

[1] The court cannot tell whether Kurt Kaufmann is the child of Eileen Grenfell and Harry Kaufmann. Preussler never alleges who Kurt's mother is. The amended cross-claim hints that Kurt may be Grenfell's son, but never says so. See Dkt. No. 29 at ¶32. The amended cross-claim also mentions that Kaufmann had a daughter, "Brooke," from a marriage prior to Grenfell. Dkt. No. 29 ¶33.

4

Preussler's amended cross-claim alleged that on February 22, 2016, the plaintiff received a Power of Attorney form (POA) from Kurt. Id. at ¶35. The POA indicated that Kaufmann had lost his ability to communicate as a result of a brain bleed. Id. The amended cross-claim stated that four days later, the plaintiff received a CBF form signed by Kurt as power of attorney; that form designated Grenfell as the primary beneficiary of the policy and Kurt as the contingent beneficiary. Id. at ¶36. Preussler averred that by February 22, 2016, Kaufmann could not communicate his wishes with any reliability and that from the date that the hospital sent Kaufmann home in February of 2016 until his death on March 27, 2016, Kurt had the opportunity to influence Kaufmann. Id. at ¶¶ 37-38.

Preussler alleged that two weeks later, the plaintiff sent letters to Kaufmann denying acceptance of the February 22, 2016 POA form and the February 26, 2016 CBF form. Id. at ¶40. Preussler asserted that the plaintiff's letters asked for the written opinion of a Wisconsin licensed attorney attesting to the POA form. Id. at ¶41. Preussler alleged that the plaintiff never received its requested information and did not accept the February 2016 POA form or the February 2016 CBF form. Id. at ¶42.

The amended cross-claim stated that on March 11, 2016, the plaintiff received a fully signed and witnessed POA form. Id. at ¶46. Preussler alleged that this POA form "was either not properly executed or was executed after improper influence by Grenfell or Kurt." Id. at ¶47. Also on March 11, 2016, the amended cross-claim asserted that the plaintiff received a CBF form

5

designating Grenfell as the primary beneficiary and Kurt as the contingent beneficiary. Id. at ¶48. Preussler alleged that the signature on the March 11, 2016 CBF form was "an unreadable signature purporting to be that of [Harry Kaufmann]," and that "the signature on the Alleged CBF is not that of [Harry Kaufmann], as he lacked the manual dexterity to sign his name in March of 2016." Id. at ¶¶48-49. Preussler said that the plaintiff sent two letters to Kaufmann on March 16 and March 17, 2016; the letters accepted the POA form and confirmed the beneficiary change. Id. at ¶¶50-51.

The amended cross-claim stated that Kaufmann died on March 27, 2016. Id. at ¶52. Preussler alleged that in April 2016, he submitted a letter to the plaintiff stating the legal basis for his claim to the $150,000 policy. Id. at ¶55. He alleged that Kurt also submitted a statement which asserted that "it had been the Decedent's intention to take care of his family and change the beneficiary to his ex-wife on March 10, 2016." Id. at ¶56. Preussler alleged that on March 10, 2016, Kaufmann was not competent to make decision to change his estate plan. Id. at ¶57. On those facts, Preussler asked the court to declare him the rightful and lawful beneficiary of the policy and order that the policy's proceeds be disbursed to him. Id. at 10.

B. Grenfell's Motion to Dismiss (Dkt. No. 31)

Grenfell now moves to dismiss the amended cross-claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 32 at 2. Grenfell notes that—without the amended cross-claims specifically saying so—Preussler's claims sound in fraud, which means that he must satisfy the heightened pleading requirement

6

under Fed. R. Civ. P. 9(b). Id. at 3 (citing Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 569 (7th Cir. 2012)). Grenfell argues that Preussler failed to meet that heightened pleading standard, because he failed to identify the "who, what, where, when, and how" of his claims. Id. (citing Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 668 (7th Cir. 2008)).

Grenfell contends that as to the forgery theory stated in the amended cross-claim, Preussler fails to allege who participated in the forgery, and when, where or how the alleged forgery occurred. Id. at 5. She says he needs to plead more facts about the alleged forgery in order to state the claim. Id. (citing Johnson v. Pushpin Holdings, LLC, 821 F.3d 871, 875 (7th Cir. 2016)). As to the undue influence allegation stated in the amended cross-claim, Grenfell asserts that there "is no allegation concerning how, when, or where the Decedent was influenced." Id. at 7. She argues that Preussler has not plead facts showing undue influence under either of Wisconsin law's two methods of showing that claim. Id. Finally, she notes that Preussler's claim of undue influence concerns the POA form, but not the CBF form. Id. She argues that "Preussler's conclusory allegation that a *different* document was the result of undue influence does not give rise to an inference that a subsequently executed document was the result of undue influence." Id.

Preussler's response clarifies that his amended cross-claim raised claims for undue influence and forgery. Dkt. No. 33 at 2. He contends that the facts alleged in his amended cross-claim established that it was unlikely that the

7

CBF form contained Kaufmann's signature and that, if it did, it was the product of undue influence. Dkt. No. 33 at 2. Preussler's response never explicitly acknowledges that his claims sound in fraud sufficient to trigger the heightened pleading requirement of Rule 9(b), but he appears to accept that he must satisfy a heightened pleading standard; his "argument" section attempted to identify the places of the amended cross-claim where he alleged the when, who, what, where and how elements of the claim. Id. at 3-5.

In reply, Grenfell argued that the amended cross-claim contained the "exact sort of vague, speculative allegations that Fed. R. Civ. P. 9(b) is intended to prevent. Dkt. No. 34 at 2 (citing Pirelli Armstrong Tire Corp retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 439 (7th Cir. 2011)). She charged Preussler with "pleading-by-guesswork." Id. at 3 (citing Drobny v. JP Morgan Chase Bank, NA, 929 F. Supp. 2d 839, 846-47 (N.D. Ill. 2013)). Finally, Grenfell alleged that Preussler's conclusory allegations are the sort of "sue first, ask questions later" approach that the court should reject. Id. at 6.

### III. ANALYSIS

#### A. Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff must include in the complaint "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his

8

allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting Lang v. TCF Nat'l Bank, 249 F. App'x 464, 466 (7th Cir. 2007)).

Grenfell asks the court to analyze the amended cross-claim under Rule 9(b). That rule provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) is not constrained to "fraud" claims but applies to "averments of fraud;" "whether the rule applies will depend on that [party's] factual allegations." Borsellino v. Goldman Sachs Grp., Inc., 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." Id. (quoting Rombach v. Chang, 355 F.3d 164, 170-71 (2d Cir. 2004)).

Where Rule 9(b) applies, the Seventh Circuit requires the party to describe the "who, what, when, where, and how" of the fraud. Pirelli, 631 F.3d at 441. At the same time, "'the exact level of particularity that is required will necessarily differ based on the facts of the case.'" Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 948 (7th Cir. 2013) (quoting AnchorBank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011)). This particularity requirement "compels the [party] to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless . . . [and] forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims." Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title

9

Ins. Co., 412 F.3d 745, 749 (7th Cir. 2005) (citing Ackerman v. Northwestern Mutual Life Ins. Co., 172 F.3d 467, 469-70 (7th Cir. 1999)).

B.  Discussion

Preussler does not indicate whether he agrees that Rule 9 applies to the amended cross-claim. In his response brief, he *does* clarify that his two causes of action are forgery and undue influence. Dkt. No. 33 at 2. He then argues that he has plausibly stated these claims, pointing to the paragraphs which allegedly establish "who, what, where, when, and how" Grenfell committed fraudulent acts. See Dkt. No. 33. This indicates to the court that Preussler tacitly accepts that the court must scrutinize his cross-claim more closely than it otherwise would under Rule 8(a) or Rule 12(b)(6).

Whether Preussler agrees or not, the court finds that his cross claim must comply with Rule 9(b). His claims—forgery and undue influence—"sound in fraud." The Seventh Circuit is clear on forgery: "Forgery is a form of fraud, [], and fraud alleged in a suit in federal court must be pleaded with particularity[.]"Pushpin Holdings, 821 F.3d at 876. As for undue influence, Wisconsin law defines it as "'conduct by the transferee or another which constitutes such domination over the will as to destroy the transferor's power of independent action.'" Chesapeake Life Ins. Co. v. Parker, Case No. 18-C-643, 2018 WL 2766205, at *3 (E.D. Wis. June 8, 2018). Given that definition, undue influence also sounds in fraud. Id. (discussing fraud and undue influence together); see also Singer v. Mass. Mut. Life Ins. Co., 335 F.Supp.3d 1023,

10

1032 (N.D. Ill. 2018) (applying Rule 9(b) to undue influence under Illinois law). The court will analyze Preussler's amended cross-claim under Rule 9.

The amended cross-claim itself does not specify the nature of the claims it alleges. In a typical complaint, the court would expect to see a section containing factual allegations followed by a list of enumerated causes of action. The amended cross-claim does not contain such a "causes of action" section. This puzzles the court, given that it dismissed the original cross-claim because of the confusing nature of the allegations it contained and its failure to meet the Rule 12(b)(6) standard. For the first time in his response brief to Grenfell's motion, Preussler indicates that he has tried to state claims for forgery and undue influence. Dkt. No. 33 at 2. While perhaps not fatal to the amended cross-claim, failing to identify the causes of action until the response brief is a sign that the amended cross-claim may not meet the "particularity" requirement.

Again, courts applying Rule 9(b) generally look for the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" Pirelli, 631 F.3d at 442 (quoting United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009)). As for "who," Preussler argued that he stated who committed the fraud—"Kurt Kaufmann and Grenfell." Dkt. No. 33 at 4. He points to paragraph forty-seven of the amended cross-claim, which reads:

> 47.   Upon information and belief, the Alleged POA is invalid, as it was either not properly executed or was executed after improper influence by Grenfell or Kurt.

11

Dkt. No. 29 at ¶47. As for the "what" section, Preussler argues that he has plausibly stated that Kurt developed a close relationship to Kaufmann after the cancer diagnosis and that Kurt "took actions relating to Kaufmann's finances and business concerns." Dkt. No. 33 at 4. As for "when," Preussler says that he alleged the forgery and/or undue influence occurred in the sixty-five days between Kaufmann's cancer diagnosis—January 22, 2016—and his death—March 27, 2016. Id. at 3. As for "where," Preussler says:

> Kaufmann was hospitalized in late January of 2016, at Froedert Hospital, at paragraphs 18 and 19. He alleges, in ¶22, that after exploratory surgery in early February of 2016, Kaufmann was sent home on Hospice care. These allegations set forth the **where** required.

Id. at 4 (emphasis in original). Finally, as to "how," Preussler says that he alleged undue influence in paragraph forty-seven of his cross-claim and that paragraph forty-nine alleged forgery. Id. Paragraph forty-nine reads:

> Upon information and belief, the signature on the Alleged CBF is not that of the Decedent, as he lacked the manual dexterity to sign his name in March of 2016.

Dkt. No. 29 at ¶49. The paragraph then refers the court to affidavits from Robert Preussler and Fred Zastrow. Id. Preussler concludes the response brief by stating that he has provided all the facts that he knows and explaining that many of his assertions are "upon information and belief" because "many of the details of what occurred between January 22, 2016 and March 27, 2016 are unknown to Preussler." Id. at 5.

The point of the Rule 9(b) heightened pleading requirement is that it "forces [a party] to conduct a careful pretrial investigation[.]" Fidelity, 412 F.3d

at 749. It also prevents a "sue first, ask questions later" philosophy. Pirelli, 631 F.3d at 441. It does not appear that Preussler carefully investigated the allegations in the amended cross-claim, and it appears that he has adopted the very "sue first, ask questions later" approach the rule was designed to prevent. For example, Preussler states that the information in paragraph forty-seven (which Preuessler points to for both the "who" and the "how" information) is provided "upon information and belief," and the paragraph contains disjunctive, alternate theories: "the Alleged POA is invalid as it was either not properly executed *or* was executed after improper influence by Grenfell *or* Kurt." Dkt. No. 29 at ¶47 (emphasis added). Preussler makes many of his allegations "upon information and belief," including all six allegations about the allegedly invalid POA and CBF forms. See Dkt. No. 29 at ¶¶46-51.

The phrase "on information and belief" "is used by plaintiffs who have a good-faith belief in the allegations they make, but nevertheless make those allegations based on secondhand information." Beyrer, 722 F.3d at 948 (citing Pirelli, 631 F.3d at 443). Courts "frown on making allegations 'on information and belief' in the fraud context and generally find that such claims do not meet Rule 9(b)'s particularity requirement." Id. (quoting Pirelli 631 F.3d at 443). The practice is permissible only when the facts constituting the fraud are not accessible to the plaintiff and the plaintiff provides the grounds for his suspicions. Pirelli, 631 F.3d at 443.

The court understands that Preussler does not have access to all the information he would like to have at this point. His solution to this problem,

13

however, is to word his allegations in the disjunctive, thus "hedg[ing] his bets" about what happened—either "Grenfell or Kurt" committed the fraudulent activities; the POA form was "either not properly executed or was executed after improper influence." Dkt. No. 29 at ¶47. Such vague, either/or allegations are insufficient under Rule 9(b)'s heightened pleading standard. "Even with limited information, we expect plaintiffs to attempt describe the 'who, what, when, where and how' of the fraud.'" Beyrer, 722 F.3d at 949.

The amended cross-claim does not definitively identify who Preussler believes forged Kaufmann's signature on the POA and CBF forms. While it alleges that Kaufmann could not have signed the documents himself, it does not allege who did place the signatures on the documents. It does not definitively identify who Preussler believes exerted undue influence on Kaufmann. While it makes allegations about Kurt handling Kaufmann's business affairs and Kurt having the opportunity to influence Kaufmann, the pleading does not allege that Kurt was the person who exerted the undue influence; it says that the influencer was "Grenfell or Kurt." Dkt. No. 29 at ¶47. Preussler does not described any role Grenfell may have had in unduly influencing Kaufmann. Other than asserting that Grenfell and Kaufmann's divorce was contentious, and that Grenfell was the person named on the amended beneficiary form, the amended cross-claim includes no facts indicating that Grenfell exerted any influence—undue or otherwise—on Kaufmann. It is not even clear from the amended cross-claim whether Preussler believes that Kurt and Grenfell were working together to commit

14

forgery and to unduly influence Kaufmann, or whether he believes one or the other of them did so but not both.

The amended cross-claim suffers from the same defects as the complaint in Beyrer. As with the complaint in Beyrer,

> [t]here was minimal effort to connect specific behaviors to specific causes of action, which makes it exceedingly unclear what the fraud actually was. Rule 9(b) requires particular references to specific alleged fraudulent activities. Here, appellant spent a great deal of energy insinuating that fraud occurred, but failed to identify these all-important details. Even when the complaint mentions details, there is enough hedging that they cannot be said to have been identified with particularity[.]

Beyrer, 722 F.3d at 949. To plead fraud, Preussler must "reasonably notify the defendants of their purported role in the scheme." Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992). He has not done so. The court will grant Grenfell's motion to dismiss the amended cross-claim.

## III. NEXT STEPS

The court will re-align the parties, designating Preussler as the plaintiff and Grenfell as the defendant. Federal Rule of Civil Procedure 26(f) requires that, as soon as practicable, the parties must meet to discuss the nature and basis of their claims and defenses, the possibilities for prompt settlement, the timing for the initial disclosures required by Rule 26(a)(1) and a proposed discovery plan. The court will require the parties to file a Rule 26(f) plan by the date below. If the parties can agree on dates and those dates appear reasonable to the court, the court will issue a scheduling order adopting the dates. If the court has concerns, it will schedule a telephone conference. The court anticipates that the parties will include in the report a deadline by which the

parties will exchange their Rule 26(a)(1) dislosures, a deadline for disclosing the identities of experts and their reports (if the parties anticipate using experts—the court realizes that they may not anticipate doing so in a case like this), a deadline for completing fact discovery (including depositions), a deadline for filing dispositive motions and an estimate of the length of trial, if a trial were to become necessary.

## IV. CONCLUSION

The court **ORDERS** that the parties are re-aligned. The court designates Robert Preussler as the plaintiff and Eileen Marie Grenfell as the defendant.

The court **GRANTS** the defendant's motion to dismiss the plaintiff's amended cross-claim. Dkt. No. 31. The court **ORDERS** that the plaintiff's amended cross-claim, dkt. no. 29, is **DISMISSED**.

The court **ORDERS** that by the end of the day on **Wednesday, August 14, 2019**, the parties shall file a joint, written report outlining their discovery plan. The plaintiff's counsel is responsible for filing the report, and for providing a copy to opposing counsel. If the parties are not able to agree on the terms of a joint report, they may file separate reports.

In addition to the discovery plan, the report shall include the following:

1. A brief statement of the nature of the case;
2. Whether the parties expect to amend the pleadings;
3. Whether the parties anticipate joining other parties;
4. The nature of the discovery each party contemplates, and the amount of time the parties believe they need to complete that discovery;

16

5. Any motions the parties contemplate;

6. The estimated length of trial;

7. Whether any party is requesting a jury trial;

8. A statement of any other issues that might impact trial scheduling; and

9. A statement attesting to the fact that the parties have discussed each of the above issues.

If, after review of the Rule 26(f) report, the court decides a Rule 16 scheduling conference is necessary, it will contact the parties to set a hearing.

If the parties are interested in participating in mediation at any point, they should contact the court, with a representative of both parties on the line, to make arrangements.

Dated in Milwaukee, Wisconsin this 23rd day of July, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**